UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-62453-CV-DIMITROULEAS

BRIDGET QUINN,

     Plaintiff,

vs.

TRANSOCEANIC CABLE SHIP COMPANY, LLC
nka SUBCOM LLC.,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This Cause is before the Court on Defendant Transoceanic Cable Ship Company, LLC's Motion to Dismiss, filed herein on January 30, 2026. The Court has considered the Motion [DE 15], the Response [DE 18], filed February 17, 2026, and the Reply [DE 21], filed February 27, 2026, as well as the supplemental briefing [DEs 24, 25], and is otherwise fully advised in the premises.

### I.    BACKGROUND

Plaintiff, Captain Bridget Quinn ("Plaintiff" or "Quinn'), is a former deep-sea merchant mariner and naval reservist who worked for SubCom for six years. Defendant SubCom designs, manufactures, and deploys cable networks for global high-speed data transmission. Compl. ¶ 34. Plaintiff alleges that following her employment with Defendant, SubCom made false and malicious statements about Plaintiff to the federal Defense Counterintelligence and Security Agency ("DCSA") in response to background-check forms sent as part of her application for federal employment. *Id.* ¶ 113. The statements accused Quinn of dishonesty, questionable ethics,

1

and falsification of information concerning the identity of her supervisor. They also stated she was not eligible for rehire. *Id.* at p. 1. Based upon these facts among others, Plaintiff brings four claims: defamation per se, defamation by implication, trade libel, and breach of contract. She seeks compensatory and punitive damages.

Defendant Transoceanic Cable Ship Company, LLC ("TCSC" or "Defendant") moves to dismiss on the grounds that this Court lacks personal jurisdiction over the entity, that venue is improper, and that Plaintiff fails to state a claim. Plaintiff's jurisdictional allegations rest upon the assertion that SubCom is registered to conduct business in Florida, and in fact conducts business in Florida, specifically with the American Maritime Officers ("AMO") Union in Dania Beach, Broward County, Florida [DE 1] ¶ 2. And, as a large part of the professional development offered by the AMO and required by SubCom, Plaintiff would often visit Florida to attend the training school offered by the AMO Union. *Id.* ¶¶ 5–17.

Defendant argues that SubCom is not a named Defendant in this action. Instead, TCSC is the only named Defendant. SubCom is the parent company of TCSC, which is not the same entity as TCSC (despite the case style). *See* Declaration of Scott Winfield 1 ¶ 6. TCSC, in turn, is incorporated in Delaware, with offices in Baltimore, Maryland, and has its principal place of business in New Jersey. *Id.* ¶ 5. TCSC does not do business in Florida, has no ports or physical operations in Florida, has no employees assigned to work in Florida, and does not market to Florida residents. *Id.* ¶¶ 7–10. Nevertheless, TCSC does contract with Florida-Headquartered AMO. *See Cable Ship Agreement*, [DE 15-1]. Based upon this produced evidence, TCSC asserts Plaintiff lacks a basis to assert either general or specific jurisdiction over TCSC.

In turn, Plaintiff emphasizes the relationship between TCSC and AMO, Plaintiff's frequent embarkations from TCSC's vessels in Florida, and Plaintiff's required trainings through AMO in Florida. The Court addresses parties' arguments below.

## II.      STANDARD OF LAW

In analyzing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court undertakes a two-step process. Under the first step, the Court determines whether the Florida long-arm statute provides a sufficient basis for personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996). Under the second step, the Court determines whether "sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair, Inc,* 94 F.3d at 626 (quoting *International Shoe v. Washington,* 326 U.S. 310 (1945)) (citations omitted).

The burden is on the plaintiff to allege a prima facie case; the plaintiff must do so by affidavit only if the challenging defendant provides his own affidavits in support. *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir. 1999). To the extent not contradicted by the defendant's affidavits, the court should accept the facts alleged in the complaint as true. *Id.*  In the event of a conflict, all reasonable inferences should be made in favor of the plaintiff. *See Landia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1327 (S.D. Fla. 2010).

"When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258 (11th Cir. 2010) (quoting *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998)). The Eleventh Circuit has noted that the Florida long-arm statute should be strictly construed. *See Oriental*

*Imports and Exports, Inc. v. Maduro & Curiel⬛s Bank,* 701 F.2d 889, 891 (11th Cir. 1983) (internal

citations omitted). Under Federal Rule of Civil Procedure 12(b)(2), "[a] court must dismiss an

action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs.,*

*LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011).


### III.    DISCUSSION

It is not entirely clear on which legal theories Plaintiff rests her claim for personal

jurisdiction. Nevertheless, the Court will undertake to parse Plaintiff's best arguments. A

defendant may be subject to Florida's long-arm statute either by specific jurisdiction or general

jurisdiction. *See* Fla. Stat. § 48.193. Pursuant to Florida's general jurisdiction, a defendant may be

haled into a Florida court if it is "engaged in substantial and not isolated activity within [the] state,

whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of

the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2).

Or, a defendant may be subject to Florida courts' jurisdiction if it meets one of the enumerated

requirements under Florida's long-arm statute for specific jurisdiction. *See* Fla. Stat. § 48.193(1).

### A.  General Jurisdiction

To the extent Plaintiff attempts to establish that this Court has general jurisdiction over

Defendant TCSC via its relationship with Florida-based AMO, this argument is unpersuasive.

Under Florida's long-arm statute, general jurisdiction "extends to the limits on personal

jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*,

594 F.3d 842, 846 (11th Cir. 2010) (discussing Florida law) (abrogated on other grounds). To

establish general jurisdiction over a nonresident defendant, courts ask "whether that corporation's

affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home

in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal citations omitted). General jurisdiction over a nonresident entity is appropriate only where the entity is incorporated or has its principal place of business. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). Outside of these paradigmatic circumstances, a corporate defendant will be considered at home in the "exceptional case" where it has operations that are "so substantial and of such a nature as to render the corporation at home in that state." *Waite.*, 901 F.3d at 1317 (discussing *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 412 (2017)).

In this case Defendant TCSC is incorporated in Delaware, with offices in Baltimore, Maryland, and has its principal place of business in New Jersey. Winfield Decl. 1 ¶ 5. Additionally, SubCom is allegedly a New Jersey LLC with its principal place of business in Baltimore. Compl. ¶ 2. Thus, neither "paradigmatic" method for general personal jurisdiction applies here.

To the extent Plaintiff seeks to invoke the "exceptional case" fact pattern, Plaintiff fails to meet its "heavy burden" of doing so. *Waite.*, 901 F.3d at 1317. Plaintiff alleges that she (1) completed mandatory Military Sealift Command training at the AMO Training School in Florida at Defendant's request; (2) made two separate trips to Florida to complete Basic Safety and Firefighting training required to maintain her Merchant Mariner Credential, which Defendant required as a condition of sailing; (3) attended a Ship Handling for Third Mates course in Florida that advanced her licensure and enabled her to serve Defendant in higher-ranked duties sooner. *See* Compl. ¶ 12. She further alleges that Defendant maintained a policy of refusing to pay for non-AMO training if AMO offered an equivalent course, effectively channeling professional development through their dedicated Florida vendor. *Id.* ¶ 12(d). Moreover, Plaintiff alleges she completed additional Florida-based training tied to promotion eligibility, with financial incentives

provided by Defendant. *Id.* ¶ 13. Plaintiff also contests the statements in the Winfield declaration—albeit without supporting evidence. The evidence also suggests that on several occasions, Quinn boarded Defendant's ship, the Endeavor, from a port in Florida.

Even taking Plaintiff's version of events as true, these allegations hardly amount to any exceptional circumstance that would take the facts here outside the usual case and subject TCSC to general jurisdiction in Florida. *Compare Daimler AG v. Bauman,* 571 U.S. 117, 137-39 (2014) (holding general jurisdiction did not exist over defendant in California even where defendant's subsidiary had multiple facilities in California and was "the largest supplier of luxury vehicles to the California market").

Plaintiff also premises her general jurisdiction argument on the fact that SubCom, albeit a foreign entity, is registered to conduct business in Florida. Despite Plaintiff's apparent concession that SubCom is not the named defendant and is a separate entity from TCSC, *see* [DE 18] p. 7, Plaintiff argues that the complaint "alleges a unified operational conduct" by the companies' officers. Plaintiff attaches a "Disciplinary Warning," on SubCom letterhead, and signed by "Scott Winfield, Director, Fleet Operations and Labor" for SubCom," as well as a screenshot of Scott Winfield's LinkedIn profile, showing he works at SubCom. But even if the Court accepted that such operational overlap could lead to a unified finding of personal jurisdiction with respect to TCSC, the mere fact that SubCom is registered to operate in Florida does not suffice to subject it or TCSC to general jurisdiction in Florida. *See Waite*, 901 F.3d at 1319 (rejecting the argument that "by complying with Florida's registration scheme for foreign businesses, a corporation consents to jurisdiction in Florida for any purpose."). For these reasons, General jurisdiction is improper. The Court therefore examines whether specific jurisdiction applies.

### B. Specific Personal Jurisdiction

To the extent Plaintiff argues specific jurisdiction applies, Plaintiff does not clarify which section of the long arm statute she invokes. Based upon the allegations and Defendant's arguments, the Court assumes Plaintiff invokes the committing a tort within the state under 48.193(1)(a)(2).

Specific jurisdiction requires some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (quoting *Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman,* 635 So.2d 79, 81 (Fla. 1st DCA 1994)). Although the contacts need not be the but for cause of the claim, "a defendant's general connections with the forum are not enough." *Citicorp*, 635 So.2d at 81. Specific jurisdiction is a claim-specific inquiry. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

### i. *Fla. Stat. § 48.193(1)(a)(2): Committing a Tort Within the State*

Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from. . . . [c]omitting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2) (emphasis added). Accordingly, Quinn must show that the defamation and trade libel claims arose from TCSC committing "a tortious act within" Florida. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022) ("A specific jurisdiction provision, it provides that a nonresident defendant is subject to personal jurisdiction for any cause of action "arising from" a "tortious act" committed in Florida.").

The Complaint alleges TCSC's communications with a federal agency regarding Plaintiff Quinn were defamatory. In Florida[1], the tort of defamation "is committed in the place where the defamatory material is published." *Catalyst Pharms., Inc. v. Fullerton*, No. 16-25365, 2017 WL

---

[1] A federal court sitting in diversity applies the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

6558397, at *6 (S.D. Fla. Aug. 8, 2017), *aff'd* 748 F. App'x 944, 947 (11th Cir. 2018) (dismissing amended complaint for lack of personal jurisdiction because it did not allege facts showing the statements were accessed in Florida). A statement is "published" where they are "accessible" and in fact, where they are "accessed." *Id.*; *see also Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1371 (S.D. Fla. 2019); *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010); *Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (adopting standard set forth by the Florida Supreme Court). Likewise, the tort of trade libel "is generally held to occur wherever the offending material is circulated" for personal jurisdiction purposes. *See Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 777 (1984) (citing Restatement (Second) of Torts § 577A).

The Complaint alleges that the AMO Union in Dania Beach, Florida, received the allegedly defamatory DCSA forms. According to the Complaint, the AMO "discussed" and "relied" on the DCSA forms which caused Plaintiff to suffer reputational harm within the AMO, including her ability to obtain professional benefits of membership such as career assistance and training. Compl. ¶¶ 16, 185. Plaintiff alleges that prior to the release of the DCSA forms, the AMO Union managed Quinn's benefits and some professional development. However, upon receipt of the forms, the Union allegedly stopped pursuing her severance claim, nor have they initiated arbitration to obtain her severance. *Id.* ¶¶ 185, 187.

Based upon these allegations and construing all allegations in Plaintiff's favor, Plaintiff sufficiently alleges that the communications were "accessed" in Florida, such that a tort was committed in Florida. The Eleventh Circuit has routinely applied a broad construction of the tortious conduct subsection of the Florida long-arm statute. *See, e.g., Louis Vuitton Malletier*, 736 F.3d at 1353; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). That the allegedly defamatory statements were allegedly accessed by parties in Florida suffices to subject TCSC to

8

the jurisdiction of courts in Florida. *Compare Catalyst Pharms., Inc. v. Fullerton*, No. 16-25365, 2017 WL 6558397, at *6 (S.D. Fla. Aug. 8, 2017), *aff'd* 748 F. App'x 944, 947 (11th Cir. 2018) (dismissing complaint for defamation for lack of personal jurisdiction because complaint did not allege facts showing the statements were accessed in Florida).

In their motion, Defendant argues that TCSC only communicated with the DCSA in Washington, D.C., not with the AMO in Florida. According to Defendant, the DCSA forms, based upon the terms stated on the form itself, are governed by the federal Privacy Act, and therefore only accessible to Plaintiff and "authorized government agency personnel." *See* [DE 1-2]. Although it may be true that TCSC did not send the forms to anyone except the government, it is not beyond all possibility that AMO could have somehow obtained these forms and denied Plaintiff the benefits of membership because of these forms. Defendant does not provide evidence contravening Plaintiff's allegations that AMO in fact received these forms. The Court is bound to accept Plaintiff's allegations as true where no contradicting evidence is presented. And in the case of doubt, the Court is to draw all reasonable inferences in Plaintiff's favor. *See Landia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1327 (S.D. Fla. 2010).[2] Accordingly, this section of the long arm statute is met with respect to the tort claims.

    ii.    *Due Process*

In addition to the requirements of Florida's long-arm statute, however, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Due Process Clause "imposes a more restrictive requirement than does Florida's Long-Arm Statute." *Melgarejo v.*

---

[2] Further, it is not entirely clear as a matter of law that the form would only be accessible to authorized government agency personnel. The federal privacy act expressly provides in the preamble that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S. Code § 301.

*Pycsa Panama*, S.A., 537 Fed.Appx. 852, 859 (11th Cir. 2013) (citation omitted). "[S]tates may exercise jurisdiction over only those who have established certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267 (internal quotation and citation omitted). The Court addresses the "minimum contacts" and "fair play and substantial justice" prongs in turn. Ultimately, the Court finds that the exercise of personal jurisdiction over TCSC does not satisfy the Due Process Clause.

### a.   Minimum Contacts

To assert specific jurisdiction over a nonresident defendant, Plaintiff must show: (1) "the defendant has 'purposefully directed' his activities at residents of the forum," and (2) "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Although direct causation between the nonresident's forum contacts and the plaintiff's cause of action is not required, "[t]hat does not mean anything goes[.]" *Ford Motor Co. v. Montana Eighth Jud. Dist. Court*, 592 U.S. 351, 362, 365 (2021). There must still be a "strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Parties dispute the extent of the entanglement between TCSC and AMO. Plaintiff asserts that AMO contracts out all human resources functions to AMO, and TCSC disputes this characterization. Between the evidence presented in the declarations and supporting evidence, it appears parties agree on the following connections: TCSC contracts with AMO. Those contracts

govern the operations of TCSC cable ships and apply to marine officers like Quinn. AMO governs certain disciplinary proceedings, provides certain training in Florida for TCSC, and services certain benefit plans to officers like Plaintiff. Plaintiff attended numerous training courses in Florida through AMO and at times boarded TCSC's ships in Florida. Still, TCSC hired Quinn. TCSC performs its own performance evaluations, payroll, recruiting, hiring, firing, travel, visas, work permits, and fitness for duty requirements. And it was TCSC's job to complete the forms in question and return to D.C. *See* [DEs 15-1, 22, 24-1, 25-1].

But even if TCSC purposefully availed itself of the benefits of the forum by contracting with AMO to provide somewhat extensive services to its mariners, those contacts have no apparent connection with any of Plaintiff's claims here: thus, this Court's exercise of personal jurisdiction over TCSC is ultimately improper.[3] That is, this litigation does not "result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King* Corp, 471 U.S. at 472. Instead, the claims asserted against TCSC by a non-Florida Plaintiff are based on the completion of security clearance background check forms sent from TCSC in Baltimore, Maryland to the DCSA in Washington D.C. regarding Quinn's employment with TCSC. No acts of TCSC took place in Florida. In addition, Defendant TCSC, not AMO, is accused of unlawful conduct. The alleged

---

[3] The same conclusion applies to all four of Plaintiffs' claims for defamation, defamation per se, trade libel and breach of contract. In the alternative, Plaintiff's failure to respond to Defendant's argument that this Court also lacks specific jurisdiction over the contract claim waives the issue. *See, e.g*, *Bargoot v. Sch. Bd. of Palm Beach Cnty.,* No. 21-80849-CIV, 2022 WL 293313, at *7 (S.D. Fla. Feb. 1, 2022) ("[B]y virtue of failing to respond or address the argument, Plaintiff has conceded the argument."); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.,* 277 F. Supp. 3d 1301, 1311 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."). Moreover, for this same reason, Plaintiff has failed to argue sufficiently that Defendant was operating a business in Florida under the long arm statute, which similarly requires that the cause of action arise out of the business contacts with the State. Florida. *See e.g.*, *Hinkle v. Cirrus Design Corp.,* 775 F. App'x 545, 549 (11th Cir. 2019).

defamation arose *after* Plaintiff's employment relationship with TCSC, not from any of the services provided by AMO such as trainings or benefits. and occurred as between TCSC and a federal government entity. Plaintiff alleges in her Complaint, and TCSC again affirms in its declarations, that it alone responded to the background check request from the DCSA, which forms the basis of this action. Compl. ¶¶ 111–113; [DE 22] ¶ 12. Thus, the contacts triangle between the Plaintiff, Defendant, and forum does not hold. *See e.g.*, *Frisella v. Transoceanic Cable Ship Co.,* 181 F. Supp. 2d 644, 648 (E.D. La. 2002) (finding the court could not exercise specific personal jurisdiction over TCSC under the federal Constitution where a mariner was represented by a Louisiana-based union, and "the connection between [plaintiff's] injury and SIU's hiring practices is tenuous at best."); *Hinkle.*, 775 F. App'x at, 550 ("no matter how involved Cirrus may be in the state of Florida, because the Hinkles did not demonstrate a 'direct affiliation, nexus, or substantial connection' between that involvement and their causes of action, specific jurisdiction is not proper."). And although AMO may have incidentally received the forms at some later point, satisfying Florida's long arm statute, such fortuitous contact is exactly the sort of connection that the Due Process clause has repeatedly rejected. *Burger King*, 471 U.S. at 475. ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...."). Accordingly, although some other fact pattern may give rise to personal jurisdiction over TCSC in Florida, TCSC cannot be subjected to jurisdiction in Florida upon the facts of this case.

> b.   <u>Fair Play and Substantial Justice</u>

Even if Plaintiff could establish that Defendant purposefully established minimum contacts with the forum State, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial

justice.'" *Burger King Corp.*, 471 U.S. at 476 (citing *Int'l Shoe* Co., 326 U.S. at 320). In making this determination, courts consider: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several States in furthering fundamental substantive social politics." *Id*. at 477 (internal quotation and citation omitted).

This prong, like the last one, points in Defendants favor. Plaintiff is a Pennsylvania resident. TCSC, in turn, is incorporated in Delaware, with offices in Baltimore, Maryland, and has its principal place of business in New Jersey. Declaration of Scott Winfield 1 ¶ 5. The forum has virtually no interest in this action, nor would litigation here appear to be convenient for any party.

IV.    **CONCLUSION**

For the foregoing reasons, it is ORDERED AND ADJUDGED as follows:

1. Defendant's Motion [DE 15] is **GRANTED**.

2. The Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

3. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as moot.

4. Because Plaintiff opposes Defendant's alternative request to transfer venue, the Court dismisses the action rather than transfers.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 24th day of March, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

13

Copies to: Counsel of record